EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO A. LÓPEZ ÁLAMO, acusado y apelante.

*Número:* CR-66-92      *Resuelto:* 8 de febrero de 1967

*Luis A. Archilla Laugier,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Adaljisa Díaz de Collazo, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante, Francisco A. López Álamo, fue convicto de un delito de hurto mayor por tribunal de derecho, luego de renunciar a su derecho a juicio por jurado. Se le sentenció a la pena de dos a cuatro años de presidio.

Apunta que el tribunal de instancia incurrió en cuatro errores. Considerado el récord del caso y el hábil memorándum radicado por la representación legal del apelante, concluimos que el tribunal sentenciador no incidió en los extremos apuntados.

A los efectos de resolver, resumimos a continuación los hechos del caso.

El policía Rafael López denunció al apelante por el delito de hurto mayor consistente en que a las diez de la noche del día 7 de abril de 1964, en el sitio las Bombas de Guaynabo, Puerto Rico, había sustraído el motor, transmisión y otros

equipos y piezas de un vehículo Chevrolet, propiedad de la Lcda. Pomales Álvarez. Fue llevado el apelante ante el Juez de Paz José Gallego, quien a base de la información suministrada por el testigo Agustín Crespo determinó que había causa probable y le fijó una fianza de $5,000. Al pie de la denuncia dicho juez certificó que informó a los acusados de su derecho de conversar con un familiar o con un abogado y que "no vienen obligados a hacer declaraciones y que cualquier declaración podría usarse en contra de ustedes." Sin embargo, la acusación reza que el referido delito se realizó en el sitio indicado "Allá en o por el día 10 de abril de 1964." El día de la vista, la Lcda. Pomales testificó que al salir de la Universidad Interamericana, a las 7 p.m. del 7 de abril de 1964 no encontró su automóvil en el sitio en que lo había dejado estacionado—la policía lo encontró el día 10 de ese mes en Santa Rosa, en un pastizal "dentro de la fábrica Holsum", en Bayamón. Lo habían desmantelado; que ese mismo día vio al apelante ante el Juez Gallego, en el Tribunal de Distrito, y le oyó decir "que él aceptaba que él le había sacado el motor al carro y la transmisión y lo había guardado en un garaje que él tiene"; que hizo tales manifestaciones voluntariamente sin que se le coaccionase en forma alguna para hacerlas y luego del juez hacerle las advertencias antes indicadas; que el apelante había ido "adonde estaba el carro, porque unos muchachos le avisaron de que allí estaba ese carro; entonces que él fue y le sacó el motor y la transmisión, con una grúa que él tiene lo transportó al garaje que él tiene en el barrio Fraile. Explicó que el motor lo había limpiado, que estaba en perfectas condiciones y que estaba en el garaje de él. Dio la dirección y allí fuimos y efectivamente lo encontramos." El fiscal le preguntó a la Lcda. Pomales si vio el motor y al contestar sobre si lo identificó por su número dijo que dicho número era el "E-58-T-110382 y el color original era verde, que era el mismo color que tenía el vehículo

por dentro, que todavía lo conservaba; estaba completo y bien limpiecito; él lo había limpiado y lo había . . ." Agustín Crespo testificó que a petición de un tal Cheo lo acompañó junto con el apelante, en la grúa de éste, al barrio Santa Rosa a sacar un "bumper", "detrás de la Panadería la Holsum." A preguntas del fiscal informó:

> "R.—Cuando nosotros llegamos allí Cheo se puso a sacar el 'bumper' y el motor estaba sacado, estaba debajo pillado. Estaba fuera.
> P.—¿Qué usted quiere decir con 'estaba fuera'?
> R.—Estaba quitado de todos sus tornillos.
> P.—¿Pero estaba en el sitio donde va el motor?
> R.—Sí, señor.
> P.—¿Y qué pasó con ese motor?
> R.—De ahí fue que Álamo se lo llevó.
> P.—¿Para dónde, si usted sabe, se lo llevó Álamo?
> R.—Para su taller.
> P.—¿Que radica dónde?
> R.—En Fraile Llano."

Dijo que el vehículo era un Chevrolet del 58; que no sabía de quién era; tampoco sabía si el motor era el del vehículo en cuestión. Se le preguntó si eso sucedió el 7 de abril y contestó que "Sí, que fue el día 10, después, que agarraron a Cheo." Volvió la Lcda. Pomales a testificar y declaró que el vehículo quedó totalmente inservible y que las pérdidas fueron $2,500; que "El motor junto con la transmisión eso vale alrededor de $400." El Juez de paz Gallego dijo que conoció al apelante cuando se le llevó ante él en la noche del 10 de abril de 1964; que "Le informé de la denuncia presentada contra él y también le informé que tenía derecho a comunicarse con su familia o con un familiar más cercano o contratar los servicios de un abogado y le informé también que no venía obligado a hacer declaración alguna porque podría utilizarse en su contra." A preguntas del fiscal testificó así:

"P.—¿En qué consistió la conversación que usted tuvo con el señor acusado?

R.—Pues, él informó que en ese caso él había ido con una grúa y se había llevado un motor de un automóvil con la transmisión.

P.—¿Dijo él, si es que se lo dijo, dónde fue que ocurrieron los hechos, de dónde era que se había llevado ese motor y esa transmisión?

R.—De un sitio denominado, un Barrio llamado Santa Rosa, de Guaynabo."

El propio apelante negó que el referido juez le hiciera advertencia alguna y por el contrario testificó que no hizo declaración alguna ante él; que "El día siete de abril de 1964 estoy yo en el Taller de Crespo, que estoy haciendo una soldadura, viene un muchacho, el cual le llaman el Pelú, que yo no lo conozco bien y yo lo conozco por el Pelú y si a caso lo he visto tres veces es mucho y viene en solicitud de la grúa para que fuese a ayudarlo al río. Yo le dijo que no podía ir para allá porque estaba haciendo un trabajo por ahora y él me dijo: 'un favor se le hace a cualquiera, vamos allá, lo ayudamos, y venimos en seguida.' Yo cogí mi grúa y me fui y estando yo en la grúa yo vi por el espejo y después me apeé, que el Pelú tenía unas llaves en el bolsillo. Se fue y entonces al rato apareció él con un 'bumper' y después, más tarde, llamó a Crespo y entonces apareció Crespo con una pipa de mofle y la cola. Entonces oí que dijeron: 'ese carro está completamente desmantelado' y yo fui y vi y fui a averiguar y el carro estaba que en realidad no valía ni cinco centavos"; que él no montó cosa alguna de dicho sitio pero que Crespo y Cheo "montaron un bloque de un carro con transmisión"; que "el bloque con la transmisión porque el Pelú me dijo: 'llévate eso para tu taller que yo paso más tarde, lo recojo y te pago'; ya Crespo se había quedado acá en su sitio"; que entonces él se llevó "eso" a su taller, lo bajó

y lo dejó allí; que la detective fue a buscar ese equipo junto con la Lcda. Pomales. Su testimonio sobre la perjudicada es el siguiente:

"R.—Ella fue 'armá' un día después.
P.—¿Y allí ella identificó ese motor como el del carro de ella?
R.—Sí, dice ella así, pero según con la denuncia que hizo el detective el motor que ella pide ahí es el 110382."

Con respecto a la fecha en que ocurrieron los hechos, testificó el apelante así:

"P.—¿Y eso sucedió el día 7 de abril?
R.—No, eso no fue el día siete de abril, cuando me llevaron ante el juez fue el día 7 . . .
P.—¿Los hechos esos en que lo fueron a buscar fue el día siete?
R.—Eso fue el día diez.
P.—Los hechos esos de que se le acusa, de que se robaron unas piezas de automóviles fueron el día siete?
R.—Eso dice, dicen que fue el día 7.
P.—¿No sabe usted el día que fue allí?
R.—Tres o cuatro días antes de eso."

1.—El primer apuntamiento es que el tribunal de instancia no tenía jurisdicción para conocer del caso ya que la acusación fue radicada sin tener base en una determinación válida de causa probable pues los hechos sobre los que se determina causa probable fueron cometidos el 7 de abril de 1964 y los hechos imputados en la acusación ocurrieron el 10 de dicho mes y año.

■ La Regla 39 de las de Procedimiento Criminal dispone que la acusación o denuncia será suficiente aunque no se especificare fecha o el momento en que se alega que se cometió el delito, a menos que una alegación en tal sentido fuere necesaria para imputar la comisión de un delito. No obstante, la mejor práctica es determinar con razonable cer-

teza la fecha en que ocurrieron los hechos e incluirla en la denuncia y luego en la acusación.

La alegación de fecha no es necesaria para imputar el delito de hurto mayor; no es ingrediente esencial del mismo. Si bien es cierto que existe una discrepancia en cuanto a la fecha en que ocurrieron los hechos en este caso, del récord resulta obvio que se trataba de un solo incidente que dio lugar a la comisión del delito; que se determinó causa probable a base de los mismos hechos relacionados en la acusación y a base de la declaración del testigo Crespo sobre tales hechos. La discrepancia en la fecha es hija de la inseguridad de todos los testigos en precisar el día en que ocurrieron los hechos. El récord no demuestra que el apelante fuese perjudicado por tal error.

La norma de derecho es que cuando la fecha no es un ingrediente esencial del delito y la acusación alega hechos indicativos de que el delito se cometió dentro del periodo prescriptivo estatutario, un defecto en la fecha es un defecto de forma solamente. De ahí que se puede alegar que el delito se cometió entre distintas fechas de distintos meses. El alegar que el delito se cometió en fecha posterior a la acusación o el día (en blanco) de un mes en particular, no es fatal ni perjudicial a los derechos del acusado. *Arnold* v. *United States*, 336 F.2d 347 (9th Cir. 1964); *Butler* v. *United States*, 197 F.2d 561 (10th Cir. 1952); *State* v. *Andrews*, 99 S.E.2d 745 (N.C. 1957); *State* v. *Blendt*, 120 A.2d 321 (Sup. Ct. Del. 1956); *State* v. *Thomas*, 277 F.2d 577 (Kan. 1954).

La acusación en este caso alega que el delito se cometió "Allá en o por el día 10 de abril de 1964." Esto quiere decir que pudo ser un poco antes un poco después y no necesariamente en ese mismo día, es decir, que ocurrió "más o menos" para esa fecha. No hay indicación alguna en el récord de que se hubiesen cometido dos delitos de hurto, uno el 7 y

otro el 10 de abril de 1964, de manera que se pudiese concluir que se trató de procesar al apelante por un delito distinto de aquél en que se determinó causa probable o que se le procesó por un delito sin antes haberse hecho una determinación de causa probable por tal delito. Concluimos, por lo tanto, que el tribunal de instancia no incurrió en el error primeramente apuntado.

■ 2.—Arguye el apelante que no se identificó el motor robado por su número; que al apelante sólo se le pudo conectar con el motor de un vehículo no con el alegadamente hurtado. La prueba demuestra con claridad que (a) la Lcda. Pomales identificó su vehículo en el lugar de los hechos, así como el motor sustraído de su automóvil cuando dicho motor se encontraba en el garaje del apelante; lo identificó por su número y color; (b) el apelante acompañó a otros dos al lugar donde se encontraba el vehículo de la referida señora y de allí se trajo un motor y su transmisión; (c) su versión de que los otros dos le dejaron dicho equipo en su establecimiento por unos días no fue creída por el tribunal de instancia, con razón a nuestro juicio.

3.—Como tercer error, informa el apelante que no hubo prueba del valor del motor en cuestión. Carece de méritos este apuntamiento ya que del testimonio de la perjudicada aparece que valoró el motor hurtado, junto con la transmisión, en $400 que es cuatro veces mayor que la cuantía mínima fijada en la definición estatutaria del delito (33 L.P.R.A. sec. 1683).

4.—Por último, señala el apelante que la prueba era insuficiente para sostener la convicción de hurto mayor. Su representación legal cuidadosamente reseña la prueba aducida en el caso, más o menos en los extremos que lo hemos hecho previamente. Deduce de su análisis de la misma que ésta es insuficiente. No podemos convenir que lo es. La prueba demostró que el automóvil de la Lcda. Pomales fue hurtado

y que luego de conducirlo a un pastizal detrás de la fábrica Holsum en Guaynabo, fue desmantelado. El apelante y otros dos sustrajeron un gran número de piezas del mismo. En el garaje del apelante se encontró e identificó el motor junto con la transmisión del vehículo en cuestión. El juez de instancia no creyó, con razón a nuestro juicio, el testimonio de Crespo al efecto de no saber si el motor que el apelante tomó en el pastizal era el del vehículo que allí se encontraba porque el vehículo no tenía nada. Este testigo testificó que "el motor estaba sacado, estaba debajo pillado. Estaba fuera", es decir, "Estaba quitado de todos sus tornillos" pero estaba en el sitio en el vehículo donde va el motor. La inferencia es clara de este testimonio que el motor pertenecía al carro hurtado. De todos modos aparece que el apelante se llevó un solo motor del pastizal en cuestión y si poco después la Lcda. Pomales identificó el motor de su automóvil en el establecimiento de aquél, es obvio que se trataba del motor que el apelante extrajo de dentro de dicho vehículo y llevó a su garaje.

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Bayamón, en 31 de agosto de 1964.*