# 96 DTA 50

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN**

GILBERTO ALFARO BERRIOS
Demandante-Apelado

v.

AUTORIDAD DE CARRETERAS Y TRANSPORTACION
Demandada-Apelante

Núm. KLAN-95-01095

San Juan, Puerto Rico, a 20 de marzo de 1996

Panel integrado por su presidente, Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas

Urgell Cuebas, Juez Ponente

47

La Autoridad de Carreteras y Transportación de Puerto Rico, de ahora en adelante la Autoridad, presentó un escrito de apelación para revisar una sentencia sumaria parcial dictada el día 18 de agosto de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicha sentencia se resolvió que unos acuerdos y estipulaciones entre la Unión de Trabajadores de la Autoridad de Carreteras, en adelante la Unión, y la Autoridad constituyen un contrato entre las partes, válidos, vinculantes y exigibles por un tercero, en este caso el apelado, Lcdo. Gilberto Alfaro Berríos.

Conforme a los acuerdos de la Autoridad y la Unión, se seleccionó al apelado para actuar como árbitro en unos casos relacionados con la aplicación del Plan de Clasificación y Retribución de la Autoridad, a lo cual este último accedió. No empece a lo anterior la Autoridad no contrató los servicios profesionales del apelado, razón por la cual éste instó demanda sobre violación de contrato y daños y perjuicios.

Considerados los planteamientos de las partes, procedemos a confirmar la sentencia del tribunal de instancia.

**I**

El 7 de octubre de 1992 el Presidente de la Unión de Trabajadores de la Autoridad de Carreteras y el portavoz alterno de la Autoridad de Carreteras firmaron un acta acordando seleccionar un árbitro privado para resolver unos casos que la Unión había presentado ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo. Los casos estaban relacionados con la aplicación de un nuevo plan de Clasificación y Retribución aprobado por la Autoridad el 21 de diciembre de 1990. Se acordó por las partes que cada una recomendaría tres personas que cumpliesen con los requisitos establecidos en el acuerdo.

El 30 de diciembre de 1992 la Autoridad y la Unión suscribieron un acta la cual recoge los acuerdos de las partes para viabilizar la selección contratación y solución de los casos antes referidos. El acta estipula lo siguiente:

*"Comparecen de una parte la Unión de Trabajadores de la Autoridad de Carreteras y Transportación (UTAC) en adelante "La Unión" y la Autoridad de Carreteras y Transportación en adelante "La Autoridad" a través de sus representantes quienes manifiestan haber llegado libre y voluntariamente a los acuerdos que se recogen en las siguientes cláusulas:*

*1. Conforme a la Estipulación firmada el 7 de octubre de 1992 por el Presidente de la UTAC, Sr. Néstor Gasparini y la Portavoz Alterno de la Autoridad de Carreteras y Transportación Lcda. Ivette Cancel Orsini, se reunieron el 29 de diciembre de 1992, [con] el Sr Néstor Gasparini. Mayra Solivan y el Sr. Edgardo Vega en representación de "La Unión" y la Sra Carmen Vanessa Dávila y Roxana M. Zambrana Torres en representación de "La Autoridad" para seleccionar el árbitro Privado que verá los casos del Plan de Clasificación y Retribución implantado el 31 de diciembre de 1990.*

*2. Entre los tres (3) candidatos de la Unión y los tres (3) candidatos presentados por la Autoridad se seleccionó por acuerdo al Lcdo. Gilberto Alfaro.*

*3. La Autoridad absorberá el pago de los honorarios que sean negociados con el árbitro seleccionado cuyo contrato tendrá una duración de un (1) año sujeto a ser prorrogado por mutuo acuerdo entre las partes.*

*4. **La contratación del Lcdo. Gilberto Alfaro será en conformidad con los procedimientos aplicables a este tipo de contratación de Servicios Profesionales establecidos en la Autoridad de Carreteras y Transportación.***

*5. Los laudos que emita este árbitro serán finales y firmes excepto que violenten la política pública, se emitan sin jurisdicción, haya mediado fraude o conducta impropia o por otras causales establecidas por la jurisprudencia.*

*6. Las partes notificarán al Director del Negociado de Conciliación y Arbitraje que mediante este acuerdo solicitan trasladar estas querellas a un procedimiento de arbitraje privado.*

*7. Este acuerdo se otorga para preservar las mejores relaciones laborales entre las partes.*

*Dada en San Juan, Puerto Rico, hoy 30 de diciembre de 1992 ."* (Enfasis suplido )

Del anterior acuerdo se desprende que la Autoridad contrataría al apelado de conformidad con los procedimientos aplicables para este tipo de contratación. El acuerdo entre las partes la Autoridad y la Unión, le fue notificado por la Autoridad al apelado el 30 de diciembre de 1992.

El 20 de enero de 1993 el apelado cursó una notificación a la Autoridad en la que le aconsejaba la aceleración del proceso de contratación como árbitro privado para evitar mayor dilación en la ventilación de las querellas. El 27 de enero de 1993 la Autoridad acusó recibo al apelado de la antes mencionada comunicación asignándole un número de control y refiriendo el asunto a la Sra. Elba R. Rolón Directora Interina Area de Recursos Humanos, comprometiéndose además a atender dicha comunicación con la prontitud que ameritaba. Posteriormente, el apelado y Manuel Feliciano Director Auxiliar de Administración y Finanzas de la Autoridad, acordaron que los honorarios del apelante como árbitro serían a razón de sesenta dólares ($60.00) la hora. Así las cosas el 24 de febrero de 1993 el apelado envió por facsímil a la Autoridad un modelo de contrato para la prestación de sus servicios profesionales. El 10 de marzo de 1993 el apelado cursó otra comunicación al Sr. Manuel Feliciano, incluyendo el borrador de contrato que le había enviado por facsímil y copia de su resumé. En dicha comunicación el apelado expresó su deseo de que se completasen los trámites necesarios para realizar las labores para las que fue seleccionado.

El 23 de marzo siguiente, el apelado se comunicó nuevamente con el Sr. Feliciano, quien le informó que el Area de Recursos Humanos le había hecho unas observaciones sobre el contrato y que el mismo había pasado al Asesor Legal y esperaba por éste. Durante varios meses siguientes, en diversas ocasiones, el apelado trató de comunicarse por teléfono con el Sr. Feliciano y con el Asesor Legal, sin éxito. No fue hasta el 27 de agosto de 1993 que pudo conversar con el Asesor Legal, Lcdo. Francisco Alvarez quien sostuvo no haber recibido los mensajes y le solicitó copia de los documentos pertinentes. Ese mismo día el apelado le envió por facsímil al Lcdo. Alvarez copia de su expediente sobre este asunto.

El 24 de febrero de 1995 el apelado presentó una demanda contra la Autoridad por violación de contrato y daños y perjuicios. En ésta alega que la Autoridad en forma injustificada y contrario a los preceptos del Código Civil, se negó a formalizar el contrato, ignorando los términos de la estipulación acordada con la Unión. Además reclama en la demanda la suma de sesenta mil dólares ($60,000 ) de daños.

El 25 de abril de 1995 la Autoridad contestó la demanda negando responsabilidad. Además levantó una serie de defensas algunas de éstas dirigidas a sostener que no se perfeccionó el contrato y que la contratación de servicios profesionales está sujeta a las normas del gobierno sobre contratación según disponen los reglamentos aplicables y estatutos de la agencia.

El 13 de mayo de 1995 la Autoridad presentó ante el tribunal de instancia una moción de sentencia sumaria en la que en síntesis sostiene que sólo había mediado una mención del nombre del apelado en el acta del 30 de diciembre de 1992 suscrita por los representantes de la Unión y la Autoridad lo que era una etapa preliminar a la selección de un árbitro donde el apelado no formó parte del acuerdo. Sostuvo además, que para culminar el acuerdo había que seguir los procedimientos de contratación de la agencia, lo cual según dicha parte no se hizo ya que no se cumplieron con las normas de contratación aplicables. En apoyo de la moción de sentencia sumaria la Autoridad acompañó copia del acta del 30 de diciembre de 1992 de una carta circular del Departamento de Hacienda, fechada 24 de junio de 1992, en la que se establecen las normas para la contratación de servicios profesionales y consultivos en las agencias de la Rama Ejecutiva. Además incluyó copia de los estatutos corporativos de la Autoridad y de las disposiciones aplicables del Manual de Normas Básicas de Funcionamiento de la Autoridad relativas a la contratación de servicios profesionales o consultivos.

Por otro lado, el apelado presentó una oposición a la petición de sentencia sumaria de la Autoridad y a su vez solicitó sentencia sumaria parcial a su favor. A la misma acompañó dos (2) actas ambas fechadas 30 de diciembre de 1992. En una se discuten ciertos casos de empleados Uniónados y se hace mención que se seleccionó al apelado, Lcdo. Gilberto Alfaro como árbitro privado para atender los casos del Plan de Reclasificación y Retribución. En la otra se consignan los acuerdos específicos en relación a la contratación del apelado. Además, incluyó con su solicitud de sentencia sumaria una declaración jurada suscrita por él en la que hace un recuento de todas las gestiones realizadas para que se otorgase el contrato. Finalmente incluyó el apelado una serie de cartas borradores de contratos y otros documentos en apoyo de la solicitud de sentencia sumaria.

El 11 de agosto de 1995 la Autoridad se opuso a la moción de sentencia sumaria parcial del apelado y acompañó una declaración jurada del Sr. Manuel Feliciano Parrilla, Director Ejecutivo Auxiliar para Administración de Finanzas de la Autoridad de Carreteras y Transportación. En lo pertinente, la declaración del Sr. Feliciano señala lo siguiente:

*"1. ...............*

*2. Que la parte apelante en el caso de epígrafe presentó una Declaración Jurada donde alega en síntesis lo siguiente: Que le pedí que me enviara un modelo de contrato, que le indiqué que la Oficina de Recursos Humanos le había hecho una observación al modelo, que el mismo pasó a la Oficina de Asesoramiento Legal y que estaba esperando por éste.*

*3. Que declaró que recibí un modelo de contrato de la parte demandante, en mi carácter de Director Ejecutivo Auxiliar para Administración y Finanzas a los fines de someterlo al Subdirector Ejecutivo de la Autoridad de Carreteras y Transportación para que éste determinara si eran necesarios para la Autoridad los servicios profesionales de la parte demandante.*

*4. Que entre mis funciones de Director Ejecutivo Auxiliar de Administración y Finanzas no figura la facultad para otorgar contratos de servicios profesionales ni tampoco se me han delegado las mismas.*

*5. Que posteriormente el Subdirector Ejecutivo me indicó que no eran necesarios para la Autoridad los servicios profesionales de la parte demandante.*

*6. Que en vista de que el Subdirector Ejecutivo me informó que no eran necesarios los servicios profesionales de la parte demandante, no sometí a la Oficina de Asesoramiento Legal para su revisión el modelo de contrato."*

En adición a la declaración jurada del Sr. Feliciano la Autoridad acompañó con su oposición a la solicitud de sentencia sumaria del apelado una Orden Ejecutiva del Gobernador fechada 5 de enero de 1993, en la que se paralizan los nombramientos a plazas vacantes y la otorgación de nuevos contratos para la reducción de los gastos del Gobierno de Puerto Rico, sin la autorización expresa del Secretario de la Gobernación. Por último la Autoridad acompañó en su oposición un memorando suscrito por el Gobernador fechado 4 de febrero de 1993 dirigido a todos los Secretarios de Gobierno, Agencias e Instrumentalidades del Estado Libre Asociado de Puerto Rico relativo al trámite de compensación, reembolso de gastos, facturación y fiscalización de los servicios profesionales y consultivos.

Luego de considerar los escritos sometidos por las partes, el 18 de agosto de 1995 el tribunal de instancia dictó sentencia sumaria parcial a favor del apelado, resolviendo que la Autoridad había incumplido con su obligación contractual y que las estipulaciones a favor de un tercero, en este caso el apelado eran válidas y exigibles. Respecto a los daños alegados por el apelado el tribunal dispuso que en su día resolvería éstos una vez reciba la prueba de las partes.

No conforme con la sentencia sumaria parcial dictada la Autoridad presentó recurso de apelación ante este Foro señalando que el Tribunal de Primera Instancia cometió los siguientes dos (2) errores:

*(1) "Erró el Tribunal de Instancia al dictar sentencia sumaria parcial y determinar que no existían controversias de hechos por lo que procedía dictar sentencia cuando de los documentos se*

*desprendían varias controversias de hechos.*

*(2) "Erró el Tribunal de Instancia al determinar que las actas en las cuales se recogen unos acuerdos entre la Autoridad y la Unión constituyen un contrato con estipulación a favor de tercero que obliga a la Autoridad a contratar al Demandante-Apelado."*

## II

En el primer señalamiento de error aduce la Autoridad que no procedía dictar sentencia sumaria parcial ya que según ésta, existía controversia sobre los hechos, las cuales surgían de los documentos presentados por las partes en apoyo u oposición a las solicitudes de sentencia sumaria. Señala que las determinaciones de hechos numeradas trece (13) y diecisiete (17) de la sentencia del tribunal de instancia estaban controvertidas por la declaración jurada del Sr. Feliciano.

A los fines de evaluar la contención de la Autoridad a continuación transcribimos las. partes pertinentes de dichas determinaciones de hechos a que se refiere la Autoridad:

*"13. El demandante y el Sr. Manuel Feliciano Director Auxiliar de Administración y Finanzas de la Autoridad cuando acaecieron los hechos en conversación telefónica acordaron que los honorarios del demandante como árbitro serían de $60.00 la hora, según se desprende de la declaración jurada del demandante no contradicha por la demandada (Anejo C de la oposición a que se dicte sentencia sumaria)*

*17. La Autoridad no ha contratado los servicios profesionales del demandante ni ha llevado a cabo gestión alguna conducente a seguir los procedimientos aplicables a este tipo de contratación según se comprometió en los acuerdos suscritos con la Unión."*

Sostiene la Autoridad que de la declaración jurada del Sr. Feliciano surge que éste no estaba autorizado a realizar gestiones conducentes a la contratación de servicios profesionales y que, conforme lo establecen los procedimientos sí se llevó a cabo la gestión de someter la propuesta de servicios profesionales a la Oficina del Director Ejecutivo para su evaluación. Este último según sostiene la Autoridad no la recomendó favorablemente conforme a la discreción que le otorga la Ley Orgánica de la Autoridad, Ley Núm. 74 de 23 de julio de 1964, 9 L.P.R.A. Secs. 2002 *et seq.* Además, alega la Autoridad que no medió acuerdo en cuanto a los honorarios profesionales, pues lo que sucedió fue una conversación donde el apelado le informó al Sr. Feliciano que sus honorarios ascendían a sesenta dólares ($60.00) la hora.

La declaración jurada del apelado sobre los honorarios, es como sigue:

*"Con posterioridad a lo dicho, recibí una llamada de quien se identificó como el señor Manuel Feliciano y como Director Auxiliar de Administración y Finanzas de la Autoridad de Carreteras. Le informé al señor Feliciano que mis honorariios serían de $70.00 la hora señalandome éste que tenía otros contratos a $60.00 la hora. Aunque le indiqué que yo tenía  mayor experiencia, accedí a los $60.00. El señor Feliciano me pidió que le enviara un modelo de ese tipo de contratos."*

Un examen de la declaración jurada del Sr. Feliciano antes transcrita claramente revela que éste en forma alguna contradijo la declaración jurada del apelado a los efectos de que en la conversación que ellos sostuvieron se acordó el pago de honorarios profesionales a razón de sesenta dólares ($60.00) la hora.

Igualmente, resulta frívola la alegación de la Autoridad de que a base de la referida declaración jurada del apelado no se desprende que haya habido un acuerdo con respecto a los honorarios. De la declaración jurada del apelado surge que éste propuso el pago de honorarios a razón de setenta dólares ($70.00) la hora y que el Sr. Feliciano adujo que tenía otros contratos a razón de sesenta dólares ($60.00) la hora, a cuya suma accedió el apelado.

El otro señalamiento presentado por la Autoridad sobre una alegada controversia de hecho se refiere a la determinación del tribunal recurrido de que la Autoridad no había llevado a cabo gestión alguna conducente a seguir los procedimientos aplicables para la contratación del apelado. Es frívolo

este planteamiento a la luz de las declaraciones juradas y la prueba documental que tuvo ante sí el tribunal de instancia.

La declaración del Sr. Feliciano sobre el extremo anterior fue a los efectos de que recibió el modelo de contrato que le envió el apelado; que se lo llevó al Subdirector Ejecutivo de la Autoridad *"para que éste determinara si eran necesarios para la Autoridad los servicios profesionales"* y que posteriormente el Subdirector Ejecutivo le indicó que *"no era necesario para la Autoridad los servicios profesionales"* del apelado. Además de la declaración jurada del Sr. Feliciano se desprende que éste no sometió a la Oficina de Asesoramiento Legal el modelo del contrato para su revisión en vista de que el Subdirector Ejecutivo le indicó que no eran necesarios los servicios profesionales del apelado.

La declaración del Sr. Feliciano no controvierte la determinación de hecho número diecisiete (17) del tribunal de instancia, por el contrario, está plenamente sostenida en lo allí declarado. Es evidente que la Autoridad se comprometió a contratar los servicios del apelado siguiendo los procedimientos establecidos. Conforme a la declaración del Sr. Feliciano, el apelado no fue contratado porque a juicio del Subdirector Ejecutivo de la Autoridad, los servicios profesionales de éste no eran necesarios. Es significativo señalar que ni en la referida declaración jurada o en ninguna otra documentación ofrecida por la Autoridad se informa la razón para no contratar al apelado. Tampoco se hace referencia en ésta a las normas establecidas por el Gobernador para la contratación de servicios profesionales. Por el contrario, lo que sí salta a la vista es que con el sólo criterio del funcionario aquí concernido, y huérfano de fundamento, no se otorgó el contrato al apelado, a lo cual se había comprometido la Autoridad.

No podemos aceptar como válida la justificación ofrecida por la Autoridad para no contratar al apelado, fundada únicamente en el criterio personal del Subdirector Ejecutivo sin más explicación. Aceptar tal contención equilvadría a darle paso al arbitrio o capricho como base para no honrar los acuerdos formales entre la Autoridad y la Unión. Las negociaciones colectivas, al igual que los acuerdos a que lleguen los patronos y los representantes de los empleados Uniónados gozan de obligatoriedad y no pueden estar sujetos a la voluntad unilateral de una parte. Cabe señalar además que ante el tribunal de instancia tampoco se adujo por la Autoridad ninguna razón de sustancia para dejar sin efecto los acuerdos entre ella y la Unión, según plasmados en el acta del 30 de diciembre de 1992. *"Ni el Derecho ni los Tribunales de Justicia existen para justificar o permitir a los contratantes evadir el cumplimiento de sus obligaciones." Matricardi v. Peñagaricano Admor,* 94 D.P.R. 14 (1967)

También es de aplicación al caso de autos lo expresado por el Tribunal Supremo en *Morales v. Junta Examinadora de Ing.,* 99 D.P.R. 84,89-90, (1967), a los siguientes efectos:

*"Los actos y ejecutorias válidos de las instituciones de gobierno ejecutados conforme a la autoridad de ley, producen efecto jurídico con independencia de quiénes puedan ser incumbentes de dichas instituciones en determinado momento. Lo contrario sería una invitación al caos y a la inestabilidad en el orden de ley si se sostuviera que los actos y ejecutorias de las instituciones públicas no tienen mayor validez más allá del período de incumbencia de las personas que, conforme a la ley, produjeron dichos actos y ejecutorias."*

En el caso de *PFZ Props. Inc. y Gen. Acc. Ins. Co,* 138 D.P.R. ___ (1994) **94 JTS 116,** págs. 124-125, el Tribunal Supremo recoge y reitera los principios básicos para dictar una sentencia sumaria, a saber:

*"El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Solamente debe ser dictada una sentencia sumaria **'en casos claros cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes'** Medina Morales y Merck Sharpe & Dhome, Op de 7 de abril de 1994, 136 D.P.R. ___ (1994) **94 JTS 52,** 11786; Corp. Presiding Bishop CJC of LDS y Purcell, 117 D.P.R. 714,720-721; Cuadrado Lugo v. Santiago Rodríguez, Op. de 30 de abril de 1990, 126 D.P.R. ___ (1990) **90 JTS 59,** 7702."*

En consideración a lo anterior, el tribunal de instancia no erró al dictar sentencia sumaria parcial

toda vez que se demostró claramente por el apelado que no existía controversia real sustancial en cuanto a ningún hecho material en el caso.

## III

En el segundo error señala la Autoridad que el tribunal de instancia incidió al determinar que las actas en las cuales se recogen los acuerdos entre la Autoridad y la Unión constituyen un contrato con estipulación a favor de tercero que obliga a ésta a contratar al apelado. No tiene razón la Autoridad en su señalamiento.

El acta antes transcrita, así como de los otros documentos sometidos por las partes, revelan que en efecto se perfeccionó un contrato entre la Autoridad y la Unión. Los requisitos establecidos en el Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391, se configuraron a saber: Consentimiento de los contratantes; Objeto cierto que sea materia del contrato; y Causa de la obligación establecida. En el caso de autos los representantes de las partes dieron su consentimiento expreso para que se contratase al apelado con el propósito de que éste sirviera de árbitro privado para resolver los casos que tenían pendientes ante el Negociado de Conciliación y Arbitraje. Igualmente, el objeto del contrato era uno determinado, esto es, los servicios profesionales del apelado para resolver los casos en el procedimiento de arbitraje. Finalmente la causa lo constituía el deseo de las partes de resolver los casos pendientes en beneficio de cada una de ellas y así preservar las mejores relaciones laborales entre éstas.

Por otro lado, el contrato entre las partes contenía una estipulación a favor de un tercero, el apelado. Siendo ello así, éste puede exigir el cumplimiento de lo pactado, siempre que hubiese hecho saber su aceptación al obligado antes de que la estipulación a su favor fuese revocada. Art. 1209 del Código Civil 31 L.P.R.A. sec. 3374.

Es significativo denotar que la postura de la Autoridad sobre este segundo señalamiento está fundada en sostener que la conclusión del tribunal de instancia está equivocada en cuanto a que el acta constituye un contrato válido que obliga a la Autoridad a contratar al demandante. Para tal afirmación la Autoridad descansa en el argumento de la discreción que tiene el Director Ejecutivo para contratar en adición a lo que dispone la Orden Ejecutiva del Gobernador del 5 de enero de 1993. Previamente expusimos que en este caso no se realizó gestión alguna por parte de la Autoridad con el propósito de dar cumplimiento con la reglamentación aplicable así como con la Orden Ejecutiva del Gobernador la cual facultaba en aquellos casos en que se determinase la necesidad al Secretario de la Gobernación a aprobar los contratos de servicios profesionales y consultivos. Como apuntamos, fue a base del criterio personal del Subdirector de la Autoridad, que se paralizaron los procedimientos para la contratación del apelado, el cual no podía ser alterado por cambios de criterio habidos en los incumbentes de la Autoridad.

El tribunal de instancia no cometió el segundo error señalado.

## IV

Por las consideraciones anteriores, se confirma la Sentencia Sumaria Parcial dictada por el Tribunal de Primera Instancia.

Regístrese y notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General